# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLAN FAKES, et al., | ) |
| Plaintiffs, | ) 2:15-cv-01574 |
| v. | ) |
| BILLY J. TERRY, et al., | ) |
| Defendants. | ) |

| | |
|---|---|
| SPARTA INSURANCE COMPANY, et al., | ) |
| Plaintiffs, | ) 2:15-cv-1655 |
| v. | ) |
| BILLY J. TERRY, et al., | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs Allan Fakes and his wife Ann Fakes bring this diversity action against Defendants Billy Terry, Allen Sherrod, and their employer Carolina Cargo of Rock Hill ("Carolina Cargo") (collectively, "Defendants") following a truck accident that occurred in the early morning of November 24, 2013. This personal injury case was consolidated with a separate property damage case brought by Coastal Carriers, Inc., Allan Fakes's employer at the time of the accident, and Sparta Insurance Company as subrogee of Coastal Carriers, Inc. ("Consolidated Plaintiffs"), against the same Defendants. *See Sparta Ins. Co. v. Terry*, No. 15-cv-1655 (W.D. Pa.).

Defendants filed a Motion for Summary Judgment on all claims. (Defs.' Mot. for Summ. J., ECF No. 44.) For the reasons that follow, Defendants' Motion for Summary Judgment, ECF No. 44, is granted in part and denied in part.

I. **BACKGROUND**

Defendant Terry was operating Carolina Cargo's tractor trailer on Interstate 70 eastbound with fellow driver Defendant Sherrod also in the truck. (Defs.' Concise Statement of Material Facts ("CSMF") 10, ECF No. 46.) There is no dispute that both men were acting within the course and scope of their employment with Carolina Cargo. (*Id.*) At some point prior to 6:15 AM on November 24 2013, the Carolina Cargo tractor ceased operation as it pulled out of a rest stop, leaving the Carolina Cargo truck stopped in place somewhere between the merging lane and the right lane of traffic.[1] At some point between one and twenty minutes later, at approximately 6:15 AM, Fakes, operating his semi-tractor trailer and proceeding in the right lane of traffic eastbound on Interstate 70, rear-ended the stationary Carolina Cargo truck. (Defs.' CSMF 3, 5, 15, ECF No. 46; Pls.' CSMF 15, ECF No. 52; Pls.' Br. in Opp., ECF No. 53, at 2.)

All parties agree that Fakes saw the Carolina Cargo truck before he rear-ended it. (Defs.' CSMF 1, ECF No. 46; Pls.' CSMF 1, ECF No. 52.) Fake's testimony provides various measurements of distance[2] as to when he first saw the Carolina Cargo truck, but Plaintiffs maintain that Fakes, whenever he first perceived the Carolina Cargo truck, believed the truck to be in forward motion since there were no warning devices placed behind the stopped truck to indicate to upcoming drivers that the truck was in fact stopped. (Pls.' CSMF 1, ECF No. 52.) Fakes

---

[1] While Defendants maintain that the Carolina Cargo truck shut down and stopped in place (Defs.' CSMF 14, ECF No. 46), Plaintiffs allege the Carolina Cargo truck began to stall, so Terry applied breaks to stop the truck in place. (Pls.' CSMF 14, ECF No. 52.) The parties also debate whether the Carolina Cargo truck had its flashers on after coming to a halt. Defs.' CSMF 1, ECF No. 46.

[2] Fakes testified that he saw the Carolina Cargo Truck when it was 300 feet away, but then also characterized the distance as two-tenths of a mile (which is actually 1056 feet). (Defs.' CSMF 1, ECF No. 46.)

2

maintains that by the time he was able to see that the truck was actually at a halt, it was too late to make any evasive maneuvers. (*Id.*) Fakes also testified that he was coming out of a "blind corner," on an uphill turn going downhill. (Defs.' CSMF 2, ECF No. 46).

Allan Fakes allegedly suffered significant personal injuries as a result of the collision, giving rise to his personal injury claims and his wife's claims for loss of consortium. (Compl. ¶¶ 16, 77, ECF No. 1–2.) Consolidated Plaintiffs allege significant monetary damages in the payments for property damage and insurance deductibles, giving rise to their corresponding property damage claims. (Case No. 15-cv-1655, Compl. ¶ 17, ECF No. 1 ("Consolidated Complaint").) While the pled damages are different, both the Complaint and the Consolidated Complaint assert the same numerated negligence-based claims, with the exception of Mrs. Fakes's additional claims for loss of consortium.

Count I states a claim for negligence against Terry on the basis that Terry negligently failed to place emergency warning devices behind his stalled truck to warn approaching motorists and negligently failed to pull the Carolina Cargo truck off the traveled roadway and onto the shoulder. Count II states a claim for negligent training and supervision against Sherrod for failing to train and/or supervise Terry. Count III states a claim for negligent entrustment against Carolina Cargo for entrusting its truck to Terry. Count IV states a claim for negligent maintenance against Carolina Cargo for failing to inspect, repair, and/or maintain the truck in question pursuant to 49 C.F.R. § 396.3(a). Count V states a claim for negligence/negligence per se against Carolina Cargo. Count VI also pleads a claim for negligence against Carolina Cargo, asserting vicarious liability/respondeat superior on the basis of Terry's status as an employee acting within the scope of his employment to Carolina Cargo. Count VII pleads the same as Count VI but with respect to Sherrod. Count VIII pleads a claim for negligent selection/hiring/retention against Carolina Cargo with respect to Terry. Count IX pleads the same with respect to Sherrod. Mrs. Fakes then brings

3

claims X, XI, and XII against various Defendants for loss of consortium.

## II. **LEGAL STANDARD**

A party is entitled to summary judgment if it can show that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'affects the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party bears the burden of demonstrating that the evidentiary record presents no genuine issue of material fact. *Willis*, 808 F.3d at 643. If it does so, the burden shifts to the nonmoving party to "identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden . . . the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643. Inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. **ANALYSIS**

Defendants argue in their Motion for Summary Judgment that each and every claim should be dismissed. A federal court exercising diversity jurisdiction is generally obliged to apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). There is no conflict of law issue here, as the accident occurred in Washington County, Pennsylvania, and both parties agree that Pennsylvania substantive law applies to all of the common law state claims in this consolidated case. *See* Defs.' Br. in Supp., ECF No. 45; Pls.' Br. in Opp., ECF No. 53.

## A. Count I: Negligence Against Terry and Derivative Claims

According to the Plaintiffs, Terry had a duty to place warning devices behind his disabled vehicle to warn approaching vehicles that the truck was at a halt and potentially creating a road block. Pls.' Br. in Opp., ECF No. 53, at 10–11. Plaintiffs point to commercial motor vehicle regulations to show such failure demonstrates negligence per se.[3] Defendants admit no warning devices were so placed, but point to the fact that Fakes admittedly saw the truck prior to impact, which they say destroys any alleged proximate causation between the lack of warning devices and the accident. Defs.' Br. in Supp., ECF No. 45, at 10.

When causation is at issue in vehicular crashes such as this, courts applying Pennsylvania law sift through myriad legal doctrines including the "assured clear distance ahead rule" and the "sudden emergency doctrine." Here, Defendants have invoked the assure clear distance ahead rule, codified in the Vehicle Code, 75 Pa.C.S. § 3361. Under the assured clear distance ahead rule, "a driver is required to anticipate only that which is reasonable." *Lockhart v. List*, 665 A.2d 1176, 1180 (Pa. 1995). The driver must "control the speed of his or her vehicle so that he or she will be able to stop within the distance of whatever may reasonably be expected to be within the driver's path." *Id.* Defendants point to this doctrine to support their contention that a stopped or disabled vehicle is something reasonably expected to be within the driver's path, and Fakes's failure to stop prior to impact with the Carolina Cargo truck is the superseding cause of the accident, regardless of whether or not Terry was negligent for failing to put out emergency warning devices. After all, Defendants claim, Fakes saw the truck and had time to survey his surroundings in case he needed to make an evasive maneuver, and therefore should have. That, they say, is the cause of the harm to him or his truck. Defs.' Br. in Supp., ECF No. 45.

---

[3] *See* Emergency Signals; Stopped Commercial Motor Vehicles, 49 C.F.R. § 392.22 (2012).

5

Plaintiffs argue that Fakes was operating under the reasonable belief that the Carolina Cargo truck was still moving forward. The moment Fakes realized that the Carolina Cargo truck was not moving, the sudden emergency doctrine was triggered, which functions as a defense or exception to the assured clear distance ahead rule. Pls.' Br. in Opp., ECF No. 53, at 16. Had Defendant Terry placed (or caused to be placed) warning devices behind the truck, Fakes would have not been placed in a sudden emergency as he would have known that the Carolina Cargo truck was stopped, and would have had sufficient time to avoid the collision. *Id.* The sudden emergency doctrine is available to a party "who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly." *Lockhart*, 665 A.2d at 1180. The rationale for the sudden emergency doctrine is that "a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence." *Id.*

Contrary to Defendants' contentions, the doctrines of assured clear distance ahead and sudden emergency do not lend themselves easily to "precise and absolute rule[s] of law," because of the very "fact specific nature of motor vehicle accident cases." *Id.* at 1179. And here, too many factual questions loom over this negligence question for the Court to rule as a matter of law at summary judgment. The record before the Court does not clearly and unequivocally indicate that Fakes was in violation of the assured clear distance ahead rule, especially if a reasonable driver (in the early morning hours) may not have been expected to discern that a truck in a moving lane of traffic that appeared to be moving was actually stopped.[4] Defendants'

---

[4] Defendants rely heavily on this Court's Opinion in *Keifer v. Reinhart Foodservice, LLC*, a three-vehicle collision case, for the notion that a stopped vehicle cannot create a sudden emergency because "[a]n encounter with a stopped or disabled vehicle on a major highway . . . is by no means an uncommon experience." No. 09-cv-1187, 2012 WL 368047, at *12 (W.D. Pa. Feb. 1, 2012). While disabled vehicles on highway may not be uncommon, the

argument is not that Fakes was driving his truck too closely or that Fakes was driving at an unsafe speed.[5] Rather, Defendants claim that Fakes's failure to change lanes or bring his own truck to a full stop upon first seeing the Carolina Cargo truck, in and of itself, violated the assured distance ahead rule as a matter of law. A jury may agree, but a jury may also believe Fakes's testimony that he actually and reasonably perceived the truck as still moving and he continued to "control the speed of his [ ] vehicle so that he [ ] will be able to stop within the distance of whatever may *reasonable* be expected to be within [his] path." *Lockhart*, 665 A.2d at 1180 (emphasis added). Whether the actions Fakes took when he confronted the situation as he perceived it were reasonable cannot be concluded as a matter of law in this case.

And, even if Fakes is found to be in violation of this rule, the Court also cannot conclude as a matter of law that the sudden emergency doctrine is not then triggered. In order for the Court to conclude that the doctrine is *not* triggered (and thus cannot function as a defense to the defendants' assured clear distance ahead defense), the Court would have to conclude as a matter of law that it was unreasonable for Fakes to believe the Carolina Cargo truck was moving until

---

Pennsylvania Supreme Court cautioned against a rigid application of the assured clear distance ahead rule in *Lockhart*:

> [I]t is quite reasonable to hold a person accountable for colliding with a stationary object on the road which is, and has been, in plain view for everyone to see, while it is quite a distinct matter when an object or instrumentality suddenly moves into the path of an oncoming vehicle. We do not, however, believe it to be as inflexible a rule as that ascribed to it by the lower courts here. Since the precept underlying this distinction is that a driver who, if driving prudently, could have or would have seen the obstacle in the roadway, whether it was moving or stationary, the distinction is rendered meaningless where the evidence, at least arguably, suggests either that the driver would not have seen the obstacle in time to avoid a collision and/or **would not have reasonably foreseen the occurrence of the obstacle, even if prudent**. . . . [I]t is proper to charge the jury as to both doctrines where the evidence does not **conclusively establish** that it was the negligence of the person claiming the defense of sudden emergency that created the sudden emergency.

665 A.2d at 1182–83 (emphases added).

[5] Defendants point out that Fakes is unable to give any details as to how fast he was driving before the accident, or how much he slowed down, if at all, to avoid the accident. Defs.' Br. in Supp., ECF No. 45, at 11. What Fakes did or did not do, and then whether what he did or did not do here was reasonable or unreasonable, is, in the circumstances of this case, nothing short of a genuine issue of material fact.

7

the point where it became too late for Fakes to avoid a rear-end collision, which on this record, it cannot. And the record does not conclusively establish that Fakes acted negligently in the moments before the crash and that his negligence created the sudden emergency. *See Lockhart*, 665 A.2d at 1183. Therefore, whether Terry was negligent and whether that negligence was the proximate cause of the injuries and property damage are matters for a jury to determine. *See id.* at 1181 (when the facts supporting a violation of the assured clear distance rule do not "conclusively establish that the [plaintiff] was negligent as a matter of law," the jury must resolve the issue).

Because the claim for negligence against Terry survives summary judgment, the derivative claim for loss of consortium by Mrs. Fakes against Terry (Count XI) also survives. Similarly, Count VI against Carolina Cargo on the basis of vicarious liability remains a live claim in the case.

### B. Count II: Negligent Training and Supervision Against Sherrod and Derivative Claims

Pennsylvania law differs between a claim for negligent training and a claim for negligent supervision. In order to state a claim for negligent training against Sherrod, Plaintiffs must first establish that Sherrod owed a duty to train Terry on the proper safety procedures when a truck stalls on the road. In general, one does not owe a duty to control the acts of others unless that person has a "special relationship" with either the person whose conduct should be controlled or the intended victim of that conduct. *McMahon v. Pleasant Valley W. Ass'n*, 952 A.2d 731, 736 (Pa. Commw. Ct. 2008). Pennsylvania follows the Restatement (Second) of Torts, §§ 316–19, which describes the various "special relationships." While a special relationship exists between a master and servant, the Court finds no support in the Restatement or case law, and Plaintiff points to none, that a special relationship exists among co-workers who have only slightly

8

varying levels of experience nor that such special relationship materializes merely because an employer decides to pair up its employees to complete tasks. Plaintiff has failed to proffer record evidence which could support any inference that Sherrod owed a duty to train Terry.

Regarding negligent supervision, as our Court of Appeals explained in *Belmont v. MB Investment Partners, Inc.*:

> To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an *intentional* harm by an employee acting *outside the scope* of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee.

708 F.3d 470, 487–88 (3d Cir. 2013) (emphases added).

Plaintiffs cannot maintain a claim for negligent supervision because they have failed to allege or show that Carolina Cargo's employee (here, Terry) committed an intentional harm while acting outside the scope of his employment. It is crystal clear that Plaintiffs are not pleading that Terry's conduct was intentional, and Plaintiffs rely on the fact that Terry committed his acts, negligently or not, within the scope of his employment with Carolina Cargo in order to make out their vicarious liability claims. Thus, Plaintiffs fail to establish a claim for negligent supervision.

Defendants' Motion for Summary Judgment as to Plaintiffs' claim of negligent training and negligent supervision (Count II) is granted and the claim is dismissed. Because the only claim brought directly against Defendant Sherrod does not survive summary judgment, the derivative claims as to him must also be dismissed. Accordingly, Mrs. Fake's claim for loss of consortium against Sherrod (Count XII) is dismissed. In the absence of any record evidence of negligence on behalf of Sherrod, Count IX for Negligent Selection/Hiring/Retention and Count VII for vicarious liability are also dismissed.

9

## C. Count III: Negligent Entrustment Against Carolina Cargo

Plaintiffs allege that Carolina Cargo is liable for negligent entrustment because Defendant Terry was an inexperienced driver. Specifically, Plaintiffs note that Terry's only experience as a truck driver was his employment with Carolina Cargo and the accident in question occurred on Terry's first trip. Pls.' Add'l CSMF 2, ECF No. 52.

Negligent entrustment in Pennsylvania follows the Restatement (Second) of Torts, § 308. *Knecht v. Balanescu*, No. 16-cv-00549, 2017 U.S. Dist. LEXIS 169829, at *21 (M.D. Pa. Oct. 13, 2017) (citing *Ferry v. Fisher*, 709 A.2d 399, 403 (Pa. Super. Ct. 1998)). Plaintiff must show that Carolina Cargo: (1) permitted Terry, (2) to operate its truck, and (3) that Carolina Cargo knew or should have known that Terry intended to or was likely to use the truck in such a way that would harm another. *Id.* Plaintiffs contend that simply because Terry was a rookie, Carolina Cargo can be held liable; however, Plaintiffs point to no case law that imposes such strict liability on trucking companies for a new driver's first run. In fact, Plaintiffs have offered no case law promoting a heightened standard for employers of new employees in any industry. There is no evidence here that Carolina Cargo failed to properly vet Terry, that Terry did not have the correct operating licenses, or that Terry even had a questionable driving record. *Compare Prescott v. R&L Transfer, Inc.*, No. 11-cv-203, 2015 U.S. Dist. LEXIS 12002, at *15 (W.D. Pa. Feb. 2, 2015) (granting summary judgment on negligent entrustment claim where the plaintiff failed to show any evidence that the trucking company "had any reason to suspect that [the hired driver] was an incompetent or unsafe driver"), *with Burnett v. Swift Transp., Inc.*, No. 07-cv-1490, 2011 U.S. Dist. LEXIS 12613, at *18–19, 27 (M.D. Pa. Feb. 8, 2011) (denying summary judgment on negligent entrustment claim where hired driver had history of "various speeding violations and two license suspensions").

Accordingly, Defendants' Motion on Plaintiffs' claim of negligent entrustment (Count III) is granted, and Count III is dismissed.

### D. Count IV: Negligent Maintenance Against Carolina Cargo

Defendants argue there is insufficient evidence in the record to support the claim that Carolina Cargo was negligent in failing to maintain its tractor trailer. The only factual evidence of mechanical or maintenance issues in the record is one statement by a fact witness at the scene of the accident who conveyed that Defendant Terry told him that the fuel in the Carolina Cargo truck was "gelling up" as a result of the cold weather and Terry expressed doubts about the truck being in good shape. Pls' Add'l CSMF 4, ECF No. 52. However, both parties acknowledged at oral argument that, whatever happened that caused the truck to stall or cease operation, it was something to do with the transmission, not the fuel. *See* Pls' Add'l CSMF 11, ECF No. 52. Plaintiffs have offered no evidence of any negligent maintenance related to or even possibly linked to the transmission. As a result, the Motion is granted with respect to the claim for negligent maintenance, and Count IV is dismissed.

### E. Count VIII: Negligent Selection/Hiring/Retention Against Carolina Cargo for Billy Terry

For the same reasons as to Count III, Plaintiffs have failed to put forward any evidence that Carolina Cargo breached its duty to exercise reasonable care in selecting, hiring, or retaining Defendant Terry as a truck driver.[6] Count VIII is dismissed.

---

[6] The Court need not delve into whether this claim or the negligent entrustment claim is duplicative and prejudicial when brought alongside a claim of vicarious liability on the basis of respondeat superior. Even if this claim could legally stand on its own two feet, it would only be knocked down again as insufficiently supported by facts in the record to survive summary judgment.

11

## F. Count V: Negligence/Negligence Per Se Against Carolina Cargo

Plaintiff brings a claim for direct negligence against Carolina Cargo. As explained above, Plaintiffs have put forth insufficient evidence to support any claims that Carolina Cargo acted negligently. Carolina Cargo does not dispute its liability as Terry's employer on the basis of vicarious liability, but the record is devoid of any evidence that Carolina Cargo independently committed acts giving rise to a direct negligence claim. Count V is therefore dismissed with prejudice. Because all direct claims for liability against Carolina Cargo are dismissed, Count X for loss of consortium against Carolina Cargo must also be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 44, is granted in part and denied in part. An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: March 19, 2018

cc: All counsel of record